UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2009 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 09- **CR09- 01344** |
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [18 U.S.C. § 371: Conspiracy; 50 U.S.C. §§ 1701-1706: International Emergency Economic Powers Act; 18 U.S.C. § 554: Smuggling Goods from the United States; 18 U.S.C. 1956(h), (a)(2)(A): Conspiracy to Launder Money; 18 U.S.C. 1956(a)(2)(A): Money Laundering; 18 U.S.C. § 2(a),(b): Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 982(a)(1) Criminal Forfeiture] |
| JIRAIR AVANESSIAN, aka "Jerry Avanessian," aka "Jerry Avanes," and FARHAD MASOUMIAN, aka "Farhad Ma'sumiyan," aka "Farhad Ma'sumian," aka "Farhad Masouiman," aka "Farhad Masumian," aka "Farhad Masumiyan," | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

<u>Defendants and Entities</u>

1.   Defendant JIRAIR AVANESSIAN also known as ("aka")

"Jerry Avanessian," aka "Jerry Avanes" ("defendant AVANESSIAN"),

a lawful permanent resident residing in Glendale, California,

with a degree in chemical sciences, was the owner and operator of

XVAC, a company located in Glendale, California, with a business

1  address in Tehran, Iran.  Defendant AVANESSIAN also did business

2  as Grande Vitesse Systems South (aka GVS-South) with the same

3  business address as XVAC in Glendale, California, and as S.

4  Garny, with a business address in Tehran, Iran.

5      2.    Defendant FARHAD MASOUMIAN aka "Farhad Ma'sumiyan,"

6  aka "Farhad Ma'sumian," aka "Farhad Masouiman," aka "Farhad

7  Masumian," aka "Farhad Masumiyan" ("defendant MASOUMIAN"), was

8  present in Iran and other foreign countries when conspiring by e-

9  mail with defendant AVANESSIAN as set forth below.

10     3.    AVAC was a company located in Dubai, United Arab

11  Emirates ("U.A.E.").

12     4.    Total Transportation Concepts was a freight forwarder

13  located in Los Angeles, California.

14     5.    Cargo Speedline Inc. was a freight consolidating

15  company located in Glendale, California.

16     6.    Pfeiffer Vacuum, Edwards Vacuum Inc., Oerlikon Leybold

17  Vacuum, Duniway Stockroom, and LDS Vacuum Products, Inc. were

18  companies that manufactured and/or supplied vacuum pumps and

19  related parts and are either headquartered in the United States

20  or operate a United States subsidiary.

21  International Emergency Economic Powers Act

22     7.    Under the International Emergency Economic Powers Act

23  ("IEEPA"), Title 50, United States Code, Sections 1701-1706, the

24  President of the United States has been granted the authority to

25  deal with unusual and extraordinary threats to the national

26  security, foreign policy or economy of the United States, where

27  such an unusual and extraordinary threat has its source in whole,

28  or in substantial part, outside the United States.

The Iranian Transactions Regulations

8. On March 15, 1995, the President of the United States issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, as expanded and continued by Executive Order No. 12959 and 13059 and Presidential Notice of March 10, 2004, was in effect at all times relevant to this Indictment.

9. On May 6, 1995, the President of the United States issued Executive Order No. 12959 and imposed economic sanctions, including a trade embargo, against Iran ("the Iranian Sanctions"). The Iranian Sanctions prohibit, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Iranian Sanctions also prohibit any transaction within the United States or by any United States person that evades or avoids, or has the purpose of evading or avoiding, any prohibition set forth in the Iranian Sanctions. On August 17, 1997, the President issued Executive Order No. 13059, reiterating and renewing the Iranian Sanctions, which continued and was in effect at all times relevant to this Indictment.

Office of Foreign Assets Control

10. To implement the Iranian Sanctions, the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), issued the Iranian Transactions Regulations

3

("ITR") (31 C.F.R. Part 560). The ITR prohibit, among other things, the export, re-export, sale, or supply, directly or indirectly, from the United States or by a United States person wherever located, to Iran or the Government of Iran, or the financing of such export, re-export, sale or supply, of any goods technology, or services, without prior authorization from the Secretary of the Treasury. These regulations further prohibit any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the ITR, including the unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

11. The term "United States person" as used in the ITR included any United States citizen or permanent resident alien and any person in the United States.

12. Vacuum pumps and vacuum-pump-related equipment were goods and technology subject to the ITR, and accordingly such items could not be exported or transshipped to Iran by a United States person without first obtaining authorization from OFAC.

13. At no time did defendants AVANESSIAN or MASOUMIAN, or XVAC, apply for, receive, or possess a license or authorization from OFAC to export goods, technology, or services, of any description to Iran.

14. The Iranian Sanctions, the ITR, and IEEPA were in effect at all times relevant to this Indictment.

15. The Grand Jury incorporates by reference and realleges these Introductory Allegations into each and every count of this Indictment as though fully alleged therein.

4

COUNT ONE

(18 U.S.C. § 371)

A.   OBJECT OF THE CONSPIRACY

16.   Beginning at least as early as in or about January 2007 and continuing to in or about January 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN ("defendant AVANESSIAN") and FARHAD MASOUMIAN ("defendant MASOUMIAN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit an offense against the United States, namely, to export, attempt to export, and cause the export of vacuum pump and pump-related equipment from the United States, via a third country, to a country on which the United States had imposed a trade embargo, namely, Iran, without first having obtained from the United States Department of Treasury, Office of Foreign Assets Control, authorization for such export, in violation of IEEPA, 50 U.S.C. §§ 1701-1706, the Iranian Transaction Regulations, 31 C.F.R. §§ 560.203, 560.204, 560.701.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

17.   The object of the conspiracy was to be accomplished in substance as follows:

18.   Defendant AVANESSIAN would receive, from co-conspirators known and unknown to the Grand Jury, including defendant MASOUMIAN, orders for goods and technology sought by companies and persons in Iran.

19.   Defendant AVANESSIAN would purchase the desired goods and technology pursuant to the orders.

5

20.   Defendant AVANESSIAN would arrange to ship the goods and technology to AVAC in Dubai, U.A.E., making it appear that the ultimate destination of the goods and technology was the U.A.E., with defendants AVANESSIAN and MASOUMIAN knowing that the goods and technology were being sent to Iran.

21.   Defendant AVANESSIAN would falsely undervalue the shipments to the U.A.E. to reflect a value under $2,500 to avoid the filing requirements of a Shipper's Export Declaration.

22.   Defendants AVANESSIAN and MASOUMIAN would re-label the contents of shipments to the U.A.E. to mask the true contents in order to avoid detection or interception by U.S. Customs and Border Protection.

23.   Defendant MASOUMIAN and others known and unknown to the Grand Jury would arrange for the goods and technology to be transshipped from the U.A.E. to customers in Iran.

24.   Defendant AVANESSIAN would receive payment for the goods and technology from defendant MASOUMIAN and others known and unknown to the Grand Jury through international money transfers and other means.

25.   Defendants AVANESSIAN and MASOUMIAN would knowingly fail to apply for a license to ship the goods and technology to Iran, despite knowing that export of the goods and technology to Iran without such a license was prohibited by law.

C.   OVERT ACTS

26.   On or about the dates listed below, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendants AVANESSIAN and MASOUMIAN, and others known and unknown

6

to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including but not limited to the following:

December 6, 2007 Shipment

27. On January 10, 2007, defendant MASOUMIAN sent an e-mail to defendant AVANESSIAN discussing information for a Pfeiffer Vacuum turbo station DN 63 ISO-K flange with a price of "4950$."

28. On January 22, 2007, defendant MASOUMIAN sent an e-mail to defendant AVANESSIAN asking for a quote on a Pfeiffer Vacuum compact PKR 251 gauge (part number PT R26000) and sensor cable (part number PT 448 250-T).

29. On March 24, 2007, defendant MASOUMIAN sent an e-mail to defendant AVANESSIAN asking for quotes on items from Pfeiffer Vacuum and another vacuum pump company, including a quote for a Pfeiffer Vacuum EVN 116 Gas dosing valve.

30. On June 13, 2007, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN providing a quote for the following Pfeiffer Vacuum items: (1) Turbo pumping station, (2) PKR 251 compact full range gauge, and (3) EVN 116 gas dosing valve, among other items.

31. On October 9, 2007, defendant MASOUMIAN transferred and caused to be transferred approximately $39,996.66 from an entity in the U.A.E., via National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

32. On October 11, 2007, GVS Inc. sent a purchase order to Pfeiffer Vacuum for various items to be shipped to GVS-South in Glendale, California, including the following items:

7

| Quantity | Description | Unit Price |
|---|---|---|
| 4 | Economy Pumping Station inlet flange DN 63 ISO-K | $4,950.00 |
| 2 | PKR 251 Compact FullRange Pirani/Cold Cathode Gauge PTR26 000 | $900.20 |
| 1 | Measurement Cable, Compact Gauge/TPG PT 448 250-T | $72.80 |
| 1 | EVN 116 gas dosing valve with integrated shut-off valve | $969.75 |

33.    On December 4, 2007, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill indicating that the shipment contained "spare parts" and was being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.   Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 4 | Pfeiffer Air Pump Packages DN-63 | $275.00 |
| 2 | Pfeiffer gauges PTR26000 | $74.00 |
| 2 | Pfeiffer gauge cable PT 448-250-T | $40.00 |
| 1 | EVN 116 valve with shut-off system | $80.00 |

34.    On December 6, 2007, defendant AVANESSIAN, doing business as XVAC, caused Pfeiffer Vacuum turbo pumping stations DN 63 ISO-K, compact PKR 251 gauges (part number PT R26000), measurement cable, and an EVN 116 gas dosing valve, among other items, to be exported to Dubai, U.A.E.

March 28, 2008 Shipment

35.   On January 14, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail attaching a quote for Edwards Vacuum parts, including a quote for six "Speedivalve with Viton diaphrag SP25K" with a unit price of $209.00.

36.   On March 12, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $74,981.58 from an entity in the U.A.E., via National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

37.   On March 26, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching a packing slip for a blower pump system and an XVAC invoice for eight boxes.  Among the items listed on the XVAC invoice were six "SP25K Speedivalve Pneumatic Angle Valves" with a listed unit price of $15.00, a "DIP-8000 dif pump system" with a listed unit price of $230.00, a "CUP 63x 110 ACRYL-01B2 E49013105" with a listed unit price of $10.00, and a "Pump controller connecting line NT 20" with a listed unit price of $11.00.

38.   On March 28, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN stating that the original invoice and packing slip were in box number eight and that defendant AVANESSIAN would forward the shipment's air waybill as soon as he received it.

39.   On March 28, 2008, defendant AVANESSIAN sent another e-mail to defendant MASOUMIAN, informing defendant MASOUMIAN that he was attaching the eight-box air waybill for defendant MASOUMIAN's Dubai shipment.

40.   On March 28, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for eight crates indicating that the shipment contained "spare parts" and was being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.   Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|----------|-------------|-------------------|
| 6 | SP25K Speedivalve Pneumatic Angle Valves | $15.00 |
| 1 | DIP-8000 dif pump system | $230.00 |
| 3 | Pump controller connecting line NT 20 | $11.00 |
| 1 | CUP 63x 110 ACRYL-01B2 E49013105 | $10.00 |

41.   On March 28, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of Edwards Vacuum Speedivalve Pneumatic Angle Valves, Leybold DIP-8000 Diffusion Pump, Leybold pump controller connecting line NT 20, and Leybold cup 63X 110 ACRYL-01B2 E49013105, among other items, to Dubai, U.A.E.

May 23, 2008 Shipment

42.   On March 25, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN forwarding a quote from Duniway Stockroom for the following items:

10

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 5 | TERRA-921 Terranova Cold Cathode gauge controllers | $750.00 |
| 5 | IMAG-KF25 I-MAG Cold cathode sensors | $374.00 |
| 5 | IMAG-CBL = 10ft' Cable, HPS IMAG sensor to Terra-921 controller | $140.00 |

43. On March 26, 2008, defendant MASOUMIAN responded to defendant AVANESSIAN's March 26, 2008 e-mail by asking defendant AVANESSIAN to double the Duniway order.

44. On May 9, 2008, defendant AVANESSIAN, doing business as XVAC, placed an order with LDS Vacuum Products for various items, including the following:

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 300 | ISO63/250-DC-S S/S Double Claw | $6.00 |
| 50 | ISO320/500-DC-S - SS Double Claw | $14.00 |
| 100 | NW 50-200-CW - NW 50 Wing-Nut Clamp | $4.95 |

45. On May 16, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $89,944.00 from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

46. On May 19, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching a packing slip and invoice for a nine-box shipment to be picked up on "05/19/05," that included all "Donneway" items.

47. On May 23, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for nine boxes

11

1   shipped as three packages indicating that the shipment contained
2   "spare parts" and was being sent to AVAC in Dubai, U.A.E., and
3   that no Shipper's Export Declaration was required because the
4   commodity value was under $2,500.  Among the items listed on the
5   XVAC invoice submitted to Total Transportation Concepts for this
6   shipment were the following:

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 10 sets | Terr 921 with IMG-KF25 Sensor and Cables and Manual | $65.00 |
| 3 packs | ISO63/250-DC-S Double Claw Clamp | $25.00 |
| 1 pack | ISO320/500-DC-S Double Claw Clamps | $28.00 |
| 3 packs | NW50-200-CW, Wing Nut Clamp | $20.00 |

13      48.  On May 23, 2008, defendant AVANESSIAN, doing business
14   as XVAC, caused the export of Duniway TERRA-921 Terranova Cold
15   Cathode gauge controllers, ISO63/250-DC-S Double Claw Clamp,
16   ISO320/500-DC-S Double Claw Clamps, and NW50-200-CW Wing Nut
17   Clamp, among other items, to Dubai, U.A.E.

18      July 11, 2008 Shipment

19      49.  On March 6, 2008, defendant AVANESSIAN sent an e-mail
20   to defendant MASOUMIAN that referenced a prior request by
21   defendant MASOUMIAN to order from Leybold, among other items, a
22   "Screw Vacuum Pump ScrewLine SP630" with a "Cat. Nr.: 117008."

23      50.  On July 11, 2008, defendant AVANESSIAN caused Total
24   Transportation Concepts to prepare an air waybill for six boxes
25   indicating that the shipment contained "spare parts" and was
26   being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export
27   Declaration was required because the commodity value was under
28   $2,500.  Among the items listed on the XVAC invoice submitted to

1  Total Transportation Concepts for this shipment was a "Screw Pump
2  Model SP 630" with a listed unit price of $510.00.

3      51.  On July 11, 2008, defendant AVANESSIAN, doing business
4  as XVAC, caused the export of Leybold Screw Vacuum Pump Screwline
5  SP 630, among other items, to Dubai, U.A.E.

6      <u>August 27, 2008 Shipment</u>

7      52.  On March 6, 2008, defendant AVANESSIAN sent an e-mail
8  to defendant MASOUMIAN that referenced a prior request by
9  defendant MASOUMIAN to order from Leybold, among other items, an
10 "Electronic frequency converter MAG.DRIVE digital with RS-232,
11 Part No. 400035V0013."

12     53.  On July 16, 2008, defendant AVANESSIAN forwarded to
13 defendant MASOUMIAN a quote from Duniway Stockroom Company prices
14 on four different types of copper gaskets.

15     54.  Defendant MASOUMIAN responded on July 16, 2008, asking
16 defendant AVANESSIAN to order these Duniway items as soon as
17 possible so that the parts could be sent along with other items
18 in the near future.

19     55.  On August 5, 2008, defendant AVANESSIAN sent an e-mail
20 to defendant MASOUMIAN with a subject line reading "Items lest
21 [sic] which will be ready to ship" and including one set of a
22 "Leybold Turbo controller" in the list.

23     56.  On August 6, 2008, defendant MASOUMIAN sent an e-mail
24 to defendant AVANESSIAN in which he directed defendant AVANESSIAN
25 to change the description of the items to be shipped, including
26 changing the description of "copper gaskets" to "copper rings,"
27 "coating material and mo boat" to "consumable materials for

28

electrolysis," and a "Leybold Turbo controller" to a "Temperature controller."

57.  On August 13, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,953.00 from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

58.  On August 24, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN containing the total package list ready for shipment, and stating that the shipment would be in eight or nine boxes.  The list provided by defendant AVANESSIAN to defendant MASOUMIAN included four packs of copper rings and eight packs of consumable materials for electrolysis.  Defendant AVANESSIAN also informed defendant MASOUMIAN that after sending the invoice he would prepare the "original Packing slip and Invoice."

59.  On August 27, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for nine boxes indicating that the shipment contained "spare parts" and was being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.  Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

14

| Quantity | Description | Listed Unit Price |
|----------|-------------|-------------------|
| 4 sets | Copper washer and steel flanges | $15.00 |
| 5 sets | Consumable materials for electrolysis | $12.00 |
| 1 | Cooling pump station with controller | $280.00 |

60.  On August 27, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of Duniway copper gaskets and a Leybold Electronic frequency converter MAG.DRIVE digital with RS-232, among other items, to Dubai, U.A.E.

61.  On September 2, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN containing the nine wooden-box package list.  The package list contained the unaltered descriptions of the items shipped to defendant MASOUMIAN, including the copper gaskets and a "leybold Turbo controller 40035v0013."

October 24, 2008 Shipment

62.  On August 7, 2008, XVAC sent a purchase order to Oerlikon Leybold Vacuum USA for the following items, with payment to be made by a credit card in the name of defendant AVANESSIAN:

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 1 | 91276-2 D25B(MV/F-3PH)HE200-1.5HP vacuum pump | $3,128.25 |
| 1 | 28674 Gate Valve, DN 160 ISO-F EP, VA 24 V/DC | $4,324.50 |

63.  On August 21, 2008, XVAC sent a purchase order to Pfeiffer Vacuum for the following items, with payment to be made by a credit card in the name of defendant AVANESSIAN:

15

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 1 | TPG300 Total Pressure System PT G25 293 | $2,342.60 |
| 2 | PK M10 001 A FV 1 Bourdon Gauge, DN10 ISO-KF | $165.60 |
| 1 | PM C01 698DCU 150 Display Controller and Power Supply | $1,067.95 |
| 1 | Felt Oil Reservoir 180 and Up | $40.80 |

64. On September 10, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,961.58 from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

65. On October 13, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail attaching a document titled "Air Shipments Items." The attached document contained two tables, one captioned "Air Shipment Items" and the other captioned "Sea Shipment Items," with each table containing several columns including columns captioned "Part number," "Desc," and "New Description." The Air Shipments table listed the following, among other items:

| Part Number | Desc | New Description |
|---|---|---|
| 91276-2 | Leybold D25B vacuum pump | Cooling Pump |
| 28674 | Leybold gate Valve 6" Ddn-160 (Vat Valve) | Pneumatic valve |
| PT G25 293 | TPG 300 | Display |
| PK M10 001 A | FV1 Bourdon gauge, DN 10 ISO-KF | Gauge |
| PM C01 698 | DCU 150 | Display |
| PM 063 265-T | Felt oil reservoir 180 and UP | Filter |

66.  On October 16, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN informing him that the two shipments would be ready for pick up on October 20 and asking if defendant MASOUMIAN could arrange for pick up of the sea shipment.

67.  On October 21, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching the packing slip for the air and sea shipments.

68.  On October 24, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for five boxes indicating that the shipment contained "spare parts" and was being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.  Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 1 set | D-25 B Cooling pump | $175.00 |
| 1 set | 6 inch Pneumatic Valve | $44.00 |
| 4 sets | Gauges and Power Supply | $10.00 |
| 8 pack | Filter materials and Grease | $12.00 |

69.  On October 24, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of a Leybold D25-B vacuum pump, a TPG300 Total Pressure System, a FV 1 Bourdon Tube Vacuum Gauge, DCU 150 Display Control Unit, and a Felt Oil Reservoir 180 and Up, among other items, to Dubai, U.A.E.

November 4, 2008 Shipment

70.  On October 13, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail with an attachment containing, among other information, a table captioned "Sea Shipment Items." The Sea Shipment table listed, among other items, a "Pfeiffer Pump P3 oil 200 liter" to be given the new description of "lubricating oil" and an Edwards EXT-250 turbo pump and controller to be given the new description of "Car head light refurbish system."

71.  On October 27, 2008, defendant AVANESSIAN caused Cargo Speedline Inc. to prepare a bill of lading for seven boxes to be shipped via ocean freight indicating that the shipment contained "auto parts" and was being sent to AVAC in Dubai, U.A.E., and that no Shipper's Export Declaration was required.  Among the items listed on the XVAC invoice submitted to Cargo Speedline Inc. for this shipment was "lubricating oil" and "Car Head light refurbish system with accessories."

18

72. On November 4, 2008, defendant AVANESSIAN doing business as XVAC caused the export of a Pfeiffer P3Oil 200 liter, among other items, to Dubai, U.A.E.

73. On November 5, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching the invoice for the ocean shipment.

74. On January 15, 2009, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN confirming the order and purchase of Edwards Vacuum diffusion pumps, including "One Edwards EXT250M turbo."

COUNTS TWO THROUGH TWENTY

[50 U.S.C. §§ 1701-1706; 18 U.S.C. § 2; 31 C.F.R. §§ 560.203, 560.204, 560.701]

75.  On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN and FARHAD MASOUMIAN did knowingly and willfully violate and cause to be violated the embargo against Iran by exporting and attempting to export vacuum pumps and related equipment parts, as described more fully below in Counts Two through Twenty, from the United States to Iran, via Dubai, U.A.E., without first having obtained the required license or authorization from the United States Department of the Treasury, Office of Foreign Asset Control, for such export:

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
| --- | --- | --- |
| TWO | 12/06/07 | Pfeiffer PKR 251 Gauge, D 25 ISO-KF, PT R26 000 |
| THREE | 12/06/07 | Pfeiffer Economy Pumping Station, inlet flange DN 63 ISO-K |
| FOUR | 12/06/07 | Pfeiffer EVN 116 Gas Dosing Valve with Integrated Shut-off Valve |
| FIVE | 03/28/08 | Edwards Vacuum Speedivalve with Viton diaphrag SP25K |
| SIX | 03/28/08 | Leybold DIP-8000 Diffusion Pump |
| SEVEN | 05/23/08 | Duniway TERRA-921 Terranova Cold Cathode gauge controllers |
| EIGHT | 05/23/08 | LDS Vacuum ISO63/250-DC-S S/S Double Claw |

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|---|---|---|
| NINE | 05/23/08 | LDS Vacuum ISO 320/500 DC-S SS Double Claw |
| TEN | 05/23/08 | LDS Vacuum NW 5-Wing-nut Clamp |
| ELEVEN | 07/11/08 | Leybold Screw Vacuum Pump ScrewLine 00060 117008 |
| TWELVE | 08/27/08 | Duniway Copper Gaskets |
| THIRTEEN | 08/27/08 | Leybold Mag.Drive digital-line with RS-232 |
| FOURTEEN | 10/24/08 | Pfeiffer TPG300 Total Pressure System |
| FIFTEEN | 10/24/08 | Pfeiffer FV1 Bourdon Tube Vacuum Gauge, DN 10 ISO-KF |
| SIXTEEN | 10/24/08 | Pfeiffer DCU 150 Display Control Unit |
| SEVENTEEN | 10/24/08 | Pfeiffer Felt Oil Reservoir PM 063 265-T |
| EIGHTEEN | 10/24/08 | Leybold Gate Valve, DN 160, 0002028674 |
| NINETEEN | 10/24/08 | Leybold D25B Vacuum Pump, 0001091276-2 |
| TWENTY | 11/4/08 | Pfeiffer Oil, 200 liters, PK 001110-T |

COUNT TWENTY-ONE

[50 U.S.C. §§ 1701-1706; 31 C.F.R. §§ 560.203,

560.204, 560.701]

76.   On or about February 12, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIRAIR AVANESSIAN did knowingly and wilfully violate the embargo against Iran by attempting to export and send from the United States to Iran, via Dubai, U.A.E., ceramic capacitance gauges, part numbers CCR 363 VCR flanges and CCR 364 flanges, manufactured by Pfeiffer Vacuum, without first having obtained the required license or authorization from the United States Department of the Treasury, Office of Foreign Assets Control, for such export and transshipment.

COUNT TWENTY-TWO

[18 U.S.C. § 1956(h), (a)(2)(A)]

A. THE OBJECT OF THE CONSPIRACY

77. Beginning on an unknown date and continuing to in or about September 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN ("defendant AVANESSIAN") and FARHAD MASOUMIAN ("defendant MASOUMIAN"), together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed, with the intent to promote the carrying on of specified unlawful activity, namely, violating the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706, 31 C.F.R. §§ 560.203, 560.204, 560.701, to transport, transmit, and transfer funds to a place in the United States from or through a place outside the United States, all in violation of 18 U.S.C. § 1956(a)(2)(A).

B. THE MANNER AND MEANS OF THE CONSPIRACY

78. The object of the conspiracy was to be accomplished in substance by defendant MASOUMIAN wiring money from Iran via other countries to defendant AVANESSIAN in the United States.

C. OVERT ACTS

79. On or about the dates listed below, in furtherance of the conspiracy and to carry out the object of the conspiracy, defendants AVANESSIAN and MASOUMIAN, and other co-conspirators known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

80. On October 9, 2007, defendant MASOUMIAN transferred and caused to be transferred approximately $39,996.66 from an entity

1  in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E.,
2  to Washington Mutual Bank in the United States, account number
3  ending in 6401, a joint account in defendant AVANESSIAN's name.

4      81.  On March 12, 2008, defendant MASOUMIAN transferred and
5  caused to be transferred approximately $74,981.58 from an entity
6  in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E.,
7  to Washington Mutual Bank in the United States, account number
8  ending in 6401, a joint account in defendant AVANESSIAN's name.

9      82.  On April 23, 2008, defendant MASOUMIAN sent an e-mail
10  to defendant AVANESSIAN informing him that he had sent "$110,000
11  US$" to defendant AVANESSIAN and that he was waiting for the
12  packing slip with detailed packing list, in order "to do the
13  custom duties."

14      83.  On April 30, 2008, defendant MASOUMIAN transferred and
15  caused to be transferred approximately $109,975.00 from an entity
16  located in Sweden, via Swedbank in Sweden, to Washington Mutual
17  Bank in the United States, account number ending in 6401, a joint
18  account in defendant AVANESSIAN's name.

19      84.  On May 16, 2008, defendant MASOUMIAN transferred and
20  caused to be transferred approximately $89,944.00 from an entity
21  located in Sweden, via Swedbank in Sweden, to Washington Mutual
22  Bank in the United States, account number ending in 6401, a joint
23  account in defendant AVANESSIAN's name.

24      85.  On August 13, 2008, defendant MASOUMIAN transferred and
25  caused to be transferred approximately $99,953.00 from an entity
26  located in Sweden, via Swedbank in Sweden, to Washington Mutual
27  Bank in the United States account number ending in 6401, a joint
28  account in defendant AVANESSIAN's name.

86.  On September 10, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,961.58 from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

COUNTS TWENTY-THREE THROUGH TWENTY-EIGHT

[18 U.S.C. § 1956(a)(2)(A)]

87.   On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN and FARHAD MASOUMIAN transported, transmitted, transferred, and attempted to transport, transmit, and transfer, a monetary instrument and fund to a place in the United States from and through a place, in the country identified below, outside the United States, with the intent to promote the carrying on of a specified unlawful activity, namely, violating the International Emergency Economic Powers Act, in violation of 50 U.S.C. §§ 1701-1706, 31 C.F.R. §§ 560.203, 560.204, 560.701:

| COUNT | DATE | WIRE NO. | COUNTRY | BANK ACCOUNT IN THE UNITED STATES AND AMOUNT |
|-------|------|----------|---------|----------------------------------------------|
| TWENTY-THREE | 10/09/07 | 071009-00007476 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $39,996.66 |
| TWENTY-FOUR | 03/12/08 | 080312-00003424 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $74,981.58 |
| TWENTY-FIVE | 04/30/08 | 080430-00001775 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $109,975.00 |
| TWENTY-SIX | 05/16/08 | 080516-00002674 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $89,944.00 |

| COUNT | DATE | WIRE NO. | COUNTRY | BANK ACCOUNT IN THE UNITED STATES AND AMOUNT |
|---|---|---|---|---|
| TWENTY-SEVEN | 08/13/08 | 080813-00000848 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $99,953.00 |
| TWENTY-EIGHT | 09/10/08 | 080910-00003423 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $99,961.58 |

COUNTS TWENTY-NINE THROUGH THIRTY-FOUR

[18 U.S.C. §§ 554, 2]

88. On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIRAIR AVANESSIAN did fraudulently and knowingly export and send, cause to be exported and sent, and attempt to export and send from the United States merchandise, articles, and objects contrary to a law and regulation of the United States, namely, vacuum pump equipment, as described more fully below in Counts Twenty-nine through Thirty-four, without having first filed a Shipper's Export Declaration for goods being exported where the value of a single commodity was over $2,500, in violation of Title 15, Code of Federal Regulations, Part 30:

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|---|---|---|
| TWENTY-NINE | 12/06/07 | Pfeiffer Economy Pumping Station, inlet flange DN 63 ISO-K |
| THIRTY | 03/28/08 | Leybold DIP 8000 Diffusion Pump |
| THIRTY-ONE | 07/11/08 | Leybold Screw Vacuum Pump ScrewLine 00060 117008 |
| THIRTY-TWO | 08/27/08 | Leybold Mag.Drive digital-Line with RS-232 |
| THIRTY-THREE | 10/24/08 | Leybold Gate Valve, DN 160, 0002028674 |
| THIRTY-FOUR | 10/24/08 | Leybold D25B Vacuum Pump, 0001091276-2 |

COUNT THIRTY-FIVE

[18 U.S.C. § 554]

89. On or about February 12, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIRAIR AVANESSIAN did fraudulently and knowingly attempt to export and send from the United States merchandise, articles, and objects contrary to a law and regulation of the United States, namely, vacuum pump equipment, specifically Pfeiffer Vacuum Air Blower Model OKTA 1000, part number PPW41000, without having first filed a Shipper's Export Declaration for goods being exported where the value of a single commodity was over $2,500, in violation of Title 15, Code of Federal Regulations, Part 30.

FORFEITURE

[18 U.S.C. § 982(a)(1)]

90. Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant, if convicted of one or more of the offenses charged in Counts Twenty-two through Twenty-eight of this Indictment, shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in the offense in violation of 18 U.S.C. §§ 1956(a) and 1956(h) described in Counts Twenty-two through Twenty-eight, and all property traceable to such property, including the following:

    i. all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956(a) and 1956(h);

    ii. all commissions, fees, and other property constituting proceeds obtained, directly or indirectly, as a result of those violations; and

    iii. all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total value of the property described in paragraph 90(a). If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

30

91.    Pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b), defendants JIRAIR AVANESSIAN or FARHAD MASOUMIAN, if so convicted, shall forfeit substitute property, up to the total value of the total amount described in paragraph 90(a), if, by any act or omission of a defendant, said property, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c),

and 21 U.S.C. § 853]

92.  Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853, each defendant, if convicted of one or more of the offenses charged in Counts One through Twenty-one of this Indictment shall forfeit to the United States the following property:

a.  All right, title and interest in any and all property, real or personal, which constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of the offenses charged in Counts Two through Twenty-one; and

b.  A sum of money equal to the total value of the property described in paragraph 92(a).

93.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendants JIRAIR AVANESSIAN or FARHAD MASOUMIAN, if so convicted, shall forfeit substitute property, up to the total value of the total amount described in paragraph 92(a), if, by any act or omission of a defendant, said property, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited

//

//

1  with, a third party; (c) has been placed beyond the jurisdiction

2  of the court; (d) has been substantially diminished in value; or

3  (e) has been commingled with other property that cannot be

4  divided without difficulty.

A TRUE BILL

/ s /
_____
Foreperson

GEORGE S. CARDONA
Acting United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

PATRICK R. FITZGERALD
Assistant United States Attorney
Acting Chief, National Security Section

ROZELLA A. OLIVER
Assistant United States Attorney
National Security Section

ANTHONY J. LEWIS
Assistant United States Attorney
National Security Section